Mark L. Javitch (California SBN 323729)
Javitch Law Office
3 East 3rd Ave. Ste. 200
San Mateo CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705

*Attorney for Plaintiff*
And those similarly situated

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS**

| | |
|---|---|
| ERIK SALAIZ, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CLEANPLANET SOLAR LLC d/b/a CLEANWORLD SOLAR LLC, a California Limited Liability Company, and RICHARD RESLOW, an individual,<br><br>Defendants. | Civil Action No.: [Case No.]<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff ERIK SALAIZ, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendants CLEANPLANET SOLAR LLC d/b/a CLEANWORLD SOLAR LLC ("CPS") and RICHARD RESLOW ("Reslow") to stop their illegal practice of sending unsolicited telemarketing calls and texts to the telephones of consumers whose phone numbers were registered on the Federal Do Not Call Registry, and to obtain redress for all persons injured by their conduct. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorney.

## NATURE OF THE ACTION

1. Mr. Reslow operates Defendant CPS. As a part of their marketing, Defendant CPS sent thousands of calls and text messages to consumers whose phone numbers were registered on the Federal Do Not Call Registry.

2. Defendants CPS and Reslow did not obtain consent prior to sending these unsolicited calls and text messages, and, therefore, are in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

3. Congress enacted the TCPA in 1991 in response to "a torrent of vociferous consumer complaints about intrusive robocalls."

4. The TCPA instructed the Federal Communications Commission to "prescribe regulations to implement methods and procedures for protecting the privacy rights [of consumers] . . . in an efficient, effective, and economic manner and without the imposition of any additional charge to telephone subscribers." 47 U.S.C. § 227(c)(2).

5. The TCPA explicitly authorized the FCC to establish a "single national database" of telephone numbers belonging to those who object to receiving telephone solicitations. *Id*. § 227(c)(3).

6. By sending text messages and calls to people who have registered their phone numbers on the national database, Defendants CPS and RESLOW violated the privacy and statutory rights of Plaintiff and the Class.

7. Plaintiff therefore seeks an injunction requiring Defendants to stop its unconsented texting, as well as an award of actual and statutory fines to the Class members, together with costs and reasonable attorneys' fees.

## PARTIES

8. Plaintiff ERIK SALAIZ is a natural person residing in El Paso, Texas.

9. Defendant CleanPlanet Solar LLC d/b/a Cleanworld Solar LLC is a company organized and existing under the laws of California.

10. Defendant Richard Reslow is an individual residing in San Diego, CA.

## JURISDICTION AND VENUE

11. This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

12. This Court has specific personal jurisdiction over Defendants because Defendants caused the violating calls and text messages to be sent to Plaintiff in this District.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the injury occurred in this District.

## COMMON FACTUAL ALLEGATIONS

14. Defendant CPS operates a solar company that sells solar panels to consumers.

15. Defendant Reslow owns and controls Defendant CPS.

16. Defendant CPS sent out unsolicited calls and text messages soliciting Plaintiff and the putative class for its solar panels.

17. Defendant CPS failed to obtain consent from recipients, nor did it check the Do Not Call registry.

## PLAINTIFF'S FACTUAL ALLEGATIONS

18. Plaintiff registered his personal cell phone ending in 5210 on the National Do Not Call Registry since June 1, 2021.

19. Plaintiff's telephone number 5210 is a residential number and is registered to a cellular telephone service.

20. Plaintiff's telephone number 5210 is not used for commercial purposes.

21. Plaintiff uses telephone number 5210 for personal calls.

22. As part of their marketing, Defendant Reslow contracted with an unknown telemarketing company "John Doe" to make solicitation calls to thousands of consumers' residential phone numbers on behalf of Defendant CPS.

23. John Doe is an unknown business entity.

24. Defendant Reslow authorizes payments to John Doe.

25. Defendant Reslow pays John Doe out of Defendant CPS's bank accounts that they own and control.

26. Plaintiff has never had any relationship with Defendant CPS or has ever been a customer of Defendant CPS and never gave them his prior express written consent to receive the alleged calls in this case.

27. Plaintiff received at least 12 unsolicited calls on the same day from John Doe marketing solar panels on behalf of Defendants CPS and Reslow.

28. Plaintiff received at least 28 unsolicited text messages from May 14, 2024, through July 12, 2024, from Defendant CPS marketing their solar panels.

29. On February 13, 2024, Plaintiff was bombarded and harassed by John Doe who sent Plaintiff at least 12 unsolicited calls marketing Defendant CPS's solar panels.

30. John Doe called Plaintiff using two different spoofed phone numbers "443-572-4526" and "315-305-4809."

31. John Doe failed to identify themselves and who they were calling on behalf of.

32. On the first call Plaintiff received from John Doe, Plaintiff advised them he was not interested in solar panels and to stop calling. The calls did not stop.

33. Plaintiff engaged in one of the calls with John Doe in order to ascertain who John Doe was calling on behalf of.

34. Plaintiff then made contact with a representative from Defendant CPS named Terrell King who advised Plaintiff he was a sales manager with Defendant CPS.

35. Terrell King solicited Plaintiff for solar panel systems on behalf of Defendant CPS.

36. On May 14, 2024, Plaintiff received the first of 28 unsolicited text messages from Defendant CPS.

37. At the bottom of the text message it stated, "Reply STOP to unsubscribe." Plaintiff replied "Stop not interested." *See Exhibit A*.

38. Plaintiff replied "Stop not interested" to another text message received by Defendant CPS on May 17, 2024.

39. Plaintiff replied "Stop!" to another text message received by Defendant CPS on May 20, 2024.

40. Despite Plaintiff making at least three do-not-call requests, Plaintiff continued to be bombarded and harassed with over twenty more unsolicited text messages from Defendant CPS which included one of those text messages being sent from Defendant Reslow. *See Exhibit B.*

41. Each and every alleged text message Plaintiff received from Defendant CPS was sent from the phone number 505-605-5525.

42. Plaintiff did not give his prior express written consent to receive any of the alleged calls or text messages.

43. None of the alleged calls or text messages were made to Plaintiff for emergency purposes.

44. Defendant CPS and Defendant Reslow are not registered pursuant to § 302.101 of the Texas Business & Commerce Code to provide telephone solicitations directly or through their telemarketer John Doe for the alleged calls described in paragraph 27 of this complaint. The https://direct.sos.state.tx.us/telephonesearch.asp site ("Texas Registration Database") does not contain a registration for neither Defendant.

45. Defendants CPS and Reslow do not qualify for an exemption under § 302.053.

46. Plaintiff was harmed by the calls. Plaintiff was temporarily deprived of legitimate use of his phone because the phone line was tied up during the telemarketing calls and his privacy was improperly invaded. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff.

47. The alleged calls and text messages caused Plaintiff's cell phone battery's depletion, used up cellular data, and prevented Plaintiff from otherwise using his telephone for lawful purposes.

## BASIS FOR LIABILITY

48. Even if Defendant CPS and/or Defendant Reslow did not personally make the TCPA violating calls to Plaintiff, they are liable for the TCPA violations under the following theories of vicarious liability: Actual Authority, Apparent Authority, or Ratification.

## ACTUAL AUTHORITY

49. Defendant CPS and/or Defendant Reslow authorized and hired John Doe to generate prospective customers through illegal telemarketing calls.

50. Accordingly, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995) (emphasis added).

51. In their January 4, 2008, ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id*. (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

52. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

53. Defendant John Doe solicited Plaintiff on behalf of Defendants. Accordingly, John Doe was acting under the actual authority of the other Defendants to solicit Plaintiff through unauthorized telemarketing calls.

## APPARENT AUTHORITY

54. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's

behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct. 28 CC Rcd at 6592 (¶ 46).

55. Defendants authorized John Doe to generate prospective business for them through illegal telemarketing.

56. John Doe called and transferred calls to Defendant CPS who solicited Plaintiff for solar panel systems. The integration of their sales efforts was so seamless that it appeared to Plaintiff that Defendants all appeared to be acting together as the same company.

57. Consumers, including Plaintiff and members of the Class, reasonably believed and relied on the fact that John Doe had received permission to sell, market, and solicit the products of Defendant.

58. As a direct and proximate result of John Doe's illegal phone calls – which were made on behalf of and with the apparent authority of the other Defendants, Plaintiff and Class members suffered actual damages, including their time to answer the violating calls, depleted battery life, wasted time, invasion of their privacy and the nuisance of receiving the calls.

## RATIFICATION

59. Defendants knowingly and actively accepted business that originated through the illegal calls placed by John Doe.

60. By accepting these contacts and executing contracts with the robocall victims, Defendants "manifest[ed] assent or otherwise consent[ed] . . . to act" on behalf of John Doe, as described in the Restatement (Third) of Agency.

61. John Doe called Plaintiff and solicited customers to transfer to Defendant CPS.

62. Defendants received new customers and the possibility of new business.

63. Defendants ratified John Doe's TCPA violations by knowingly accepting the benefits of new customers and revenue despite the fact that the sale was generated through illegal calling.

64. Defendants further ratified John Doe's TCPA violations by being aware of the violations, being willfully ignorant of the violations or by being aware that such knowledge was lacking.

65. As a direct and proximate result of John Doe's illegal phone calls, Plaintiff and the Class members suffered actual damages, including their wasted time to answer the violating calls, the monies

paid to receive the calls, the depleted phone minutes available to them, invasion of their privacy and the nuisance of receiving the calls.

### PERSONAL LIABILITY OF DEFENDANT RESLOW

66. Defendant Reslow refuses to take any action to stop or curtail the unlawful sales practices and illegal unauthorized phone calls because these practices benefit Defendants CPS and Reslow financially.

67. "If the officer directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, he may be personally liable. See *United States v Pollution Serv. Of Oswego, Inc.*, 763 F.2d 133, 134-135 (2nd Cir.1985)

68. The "well-settled" tort rule provides that "when corporate officers directly participate in or authorized the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable." *General Motos Acceptance Corp. v. Bates*, 954 F.2d 1081, 1085 (5th Cir. 1992).

69. The Fifth Circuit has elaborated that "the thrust of the general [tort] rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the 'guiding spirit' behind the wrongful conduct….or the 'central figure' in the challenged corporate activity." *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cirt. 1985) (Citing *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F. 2d 902, 907 (1st Cir.1980)) (Citing *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001)

70. At all times material to the Complaint, acting alone or in concert with others, Defendant Reslow has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Defendant CPS including the acts or practices set forth in this Complaint.

71. Defendant Reslow is the principal director and operator of Defendant CPS, controls the day-to-day operations of Defendant CPS and directed their representatives, employees, agents, salespersons, and or telemarketers to make TCPA violating phone calls to solicit solar panel systems on behalf of Defendant CPS.

72. Defendant Reslow is not merely a bystander and is the mastermind that schemed, planned, directed, initiated, and controlled the illegal and fraudulent behavior.

73. Defendant Reslow is well aware his conduct violated the TCPA and Tex. DPTA and refused to alter her behavior. Defendant Reslow is the sole director of Defendant CPS and the only person with the power to make the unlawful, fraudulent, and unethical behavior stop. Yet, Defendant Reslow has taken no steps to stop the behavior because this behavior benefits Defendants financially.

74. Defendant Reslow should be held jointly and severally liable for both the TCPA violations and via the Tex. DTPA because he actually committed the conduct that violated the TCPA and Tex. DTPA, and/or he actively oversaw and directed this conduct.

75. Defendant Reslow should be held liable because to do otherwise would simply allow him to dissolve Defendant CPS and set up a new corporation and repeat his conduct. This would result in both the TCPA and DTPA being unenforceable.

## CLASS ALLEGATIONS

76. **Class Definition**: Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of Plaintiff and a class defined as follows:

> **TCPA Class**. All persons in the United States who: (1) from the last 4 years to present (2) Defendant called or texted (3) whose telephone numbers were registered on the Federal Do Not Call registry for more than 30 days at the time.
>
> **Texas Subclass**. All persons in Texas who: (1) from the last 4 years to present (2) Defendant called (3) whose telephone numbers were registered on the Federal Do Not Call registry for more than 30 days at the time.

77. The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

78. **Numerosity**: The exact number of the Class members is unknown and not available to Plaintiff, but individual joinder is impracticable. On information and belief, Defendant sent text messages to thousands of consumers who fall into the definition of the Class. Members of the Class can be identified through Defendant's records.

79. **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the Class members sustained damages arising out of Defendant's uniform wrongful conduct and unsolicited messages.

80. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff's claims are made in a representative capacity on behalf of the other members of the Class. Plaintiff has no interests antagonistic to the interests of the other members of the proposed Class and is subject to no unique defenses. Plaintiff has retained competent counsel to prosecute the case on behalf of Plaintiff and the proposed Class. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so.

81. **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinge on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

82. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

   a. Whether the unsolicited text messages were caused by Defendants;

     b. Whether the unsolicited text messages promoted Defendants' products or services;

     c. Whether Defendants checked the phone numbers to be called against the Federal Do Not Call registry;

     d. Whether Defendants obtained written express consent prior to sending the text messages;

     e. Whether members of the Class are entitled to treble damages based on the knowingness and/or willfulness of Defendants' conduct.

83. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

**FIRST CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227(c)**
**Do Not Call Provision**
**(On behalf of Plaintiff and the TCPA Class)**
**(Against All Defendants)**

84. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

85. The telephone numbers of Plaintiff and the Class are registered on the Do Not Call Registry.

86. Defendants' telemarketers and/or agents sent unsolicited calls and text messages to the telephone number of Plaintiff and the Class.

87. Defendants failed to obtain recipients' prior written consent to do so.

88. Defendants' telemarketers and/or agents sent the unsolicited calls and text messages for the commercial purpose of selling Defendant CPS's services to consumers.

89. Defendants' actions constitute violations of 47 U.S.C. § 227(c) of the TCPA, by soliciting telephone numbers listed on the Federal Government's National Do Not Call Registry. 47 C.F.R. § 64.1200(c)(2).

90. Plaintiff is entitled to an award of at least $500 in damages for each such violation (47 U.S.C. § 227(c)(5)(B)) or $1,500 if the violation is knowing or willful. 47 U.S.C. § 227(c)(5).

91. Plaintiff also seeks a permanent injunction prohibiting Defendants from sending calls and text messages to telephone numbers listed on the Federal Government's National Do Not Call Registry.

**SECOND CAUSE OF ACTION**
**Violations of The Texas Business and Commerce Code 305.053**
**(On behalf of Plaintiff and the Texas Subclass)**
**(Against All Defendants)**

92. Plaintiff incorporates the foregoing allegations as if set forth herein.

93. The foregoing acts and omissions of Defendants telemarketer and/or its agents constitute multiple violations of the Texas Business and Commerce Code 305.053, by making non-emergency telemarketing calls to Plaintiff's cellular telephone number without his prior express written consent in violation of 47 U.S.C. § 227 et seq.

94. On July 30, 2024, Plaintiff's attorney sent a notice of violation letter under Texas Business & Commercial Code § 17.505(a) via USPS Certified Mail on behalf of Plaintiff to Defendant. Defendant received the letter on August 2, 2024. *See* Exhibit C.

95. As of the date of this filing, Defendant has not responded pursuant to the statute.

96. Plaintiff seeks for himself an award of at least $500.00 in damages for each such violation. Texas Business and Commerce Code 305.053(b).

97. Plaintiff seeks for himself an award of up to $1,500.00 in damages for each such knowing or willful violation. Texas Business and Commerce Code 305.053(c).

**THIRD CAUSE OF ACTION**
**Violations of Texas Business and Commerce Code 302.101**
**Failure to obtain a Telephone Solicitation Registration Certificate**
**(On behalf of Plaintiff and the Texas Subclass)**
**(Against All Defendants)**

98. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

99. Defendants' illegal solicitation sales calls to Plaintiff and the putative classes without having a valid telephone solicitation as required under Tex. Bus. Com. Code 302.101.

100. On July 30, 2024, Plaintiff's attorney sent a notice of violation letter under Texas Business & Commercial Code § 17.505(a) via USPS Certified Mail on behalf of Plaintiff to Defendant. Defendant received the letter on August 2, 2024. *See* Exhibit C.

101. As of the date of this filing, Defendant has not responded pursuant to the statute.

102. As a result of Defendants violations of Tex. Bus. and Com. Code 302.101, Plaintiff may seek damages of up to $5,000 for each violation. Tex. Bus. and Com. Code 302.302(a).

103. As a result of Defendants violations of Tex. Bus. and Com. Code 302.101, Plaintiff seeks all reasonable costs of prosecuting this action, including court costs, deposition costs, and witness fees.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff ERIK SALAIZ, individually and on behalf of the Class, prays for the following relief:

A. An order certifying the Class as defined above, appointing Plaintiff as the Class representative and appointing his counsel as Class Counsel;

B. An order declaring that Defendants actions, as set out above, violate 227(c) of the TCPA, Texas Business and Commerce code 305.053, and Texas Business and Commerce code 302.101;

C. An order declaring that Defendants actions, as set out above, violate the TCPA willfully and knowingly;

D. An award of $1500 per call in statutory damages arising from the TCPA §227(c) for each intentional violation;

E. An award of $1,500 in statutory damages arising from each violation of the Texas Business and Commerce code 305.053;

F. An award of $5,000 in statutory damages arising from each violation of the Texas Business and Commerce code 302.101;

G. An injunction requiring Defendant to cease sending all unlawful calls and text messages;

H. An award of reasonable attorneys' fees and costs; and

I. Such other and further relief that the Court deems reasonable and just.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: October 11, 2024         Respectfully submitted,

By: /s/ Mark L. Javitch
Mark L. Javitch (California SBN 323729)
JAVITCH LAW OFFICE
3 East 3rd Ave. Ste. 200
San Mateo CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705
mark@javitchlawoffice.com

*Attorneys for Plaintiff and the Putative Class*